## Brown's Appeal.

Where a secret partnership between two persons exists, a prior execution on a judgment against the one carrying on the business publicly in his own name, levied on the goods belonging to the firm, is to be preferred to a subsequent execution on a judgment against the two partners as a firm.

APPEAL by William H. Brown & Co., from the decree of the Court of Common Pleas of *Chester county*, distributing moneys raised under certain *fi. fa.'s* issued against John Keech, and against John Keech & Mercer E. Gibson, partners.

John Keech kept a store in the borough of West Chester, for about four years preceding the month of April, 1846. At that time he gave up that business, and commenced building houses, and amongst the rest built a store and dwelling on the north side of Gay street, nearly opposite his former place of business.

On the first of April, 1848, he entered into articles of copartnership with Mercer E. Gibson of Philadelphia, for carrying on a dry good, grocery, and hardware business in West Chester; the partnership to continue for four years—providing, however, that in case of dissatisfaction, either party may dissolve the partnership by giving to the other three months' notice. In the articles of agreement it was stipulated that the business of said copartnership be done under the name of John Keech.

It was alleged in the statement on the part of the appellant, that it was understood between Keech and Gibson, that the partnership between them was not to be made public, and there is no evidence that it was known to any person except the counsel who drew the agreement, and William H. Brown & Co., until the execution of Brown & Co. was issued; the business was conducted in the name of John Keech. The store was opened in the new building on the north side of Gay street, on the 10th April, 1848, and was closed by the sheriff on the 24th December, 1849, and during that time John Keech was not engaged in any other business.

Executions were issued and placed in the hands of the sheriff at the dates hereafter stated.

Job Hayes *v.* *John Keech.*—Judgment confessed by Keech December 20, 1849. *Fi. fa.* issued December 22, 1849; debt $684.93.

Moses Keech *v.* same.—Judgment December 24, 1849. *Fi. fa.* December 24, three hours fifty-one minutes, P. M.; debt $2200.

Abigail Pyle *v.* John Keech.—Judgment December 20, 1849; *fi. fa.* December 24, three hours fifty-two minutes, P. M.

William H. Brown & Co. *v.* John Keech and Mercer E. Gibson, trading under firm of John Keech.—Judgment entered December 24, 1849; *fi. fa.* December 25; debt $2374.03.

Three judgments were subsequently entered against *John Keech;* one being in favor of Thomas J. Megear.

[Brown's Appeal.]

The sheriff returned on all the writs, that he had "levied on personal property of John Keech, and made by the sale of the same $48; and also levied on personal property of John Keech and Mercer E. Gibson, trading under the firm of John Keech, and made by the sale of the same $2918.58; in all, the sum of $2966.58, the costs having been first deducted therefrom."

All the claims except those of Job Hayes, Moses Keech, Abigail Pyle, and Thomas J. Megear, were for store goods which were purchased for and went into the business of the firm.

The claim of *Job Hayes* was for money loaned by him at various times to John Keech, for which Keech gave him his note, dated April 26, 1849, at ten days, for $656.08. On this note suit was brought by Hayes on the 6th of December, 1849. Counsel appeared for the defendant; a rule of reference was taken out; and on December 20, 1849, before an award could have been had, judgment was confessed by defendant's attorney.

*Moses Keech* was the father of John Keech. In the spring of the year 1849, John borrowed of one Benjamin Hayes the sum of $2200, and executed to him his bond for that amount, on which Moses Keech became surety. Hayes entered judgment on the bond against the Keeches. At the time this money was borrowed, it was known to all the parties that $700 of it were intended for the payment of a lien on a house owned by John Keech in Biddle' street, and it was so applied. Another portion of it was to pay a debt due by Keech to U. V. Pennypacker, Esq.; but it was alleged Keech failed in that engagement, and appropriated the principal part of the balance of the $2200 to the business of the firm. For the purpose of indemnifying Moses Keech from any loss as surety on the said bond, John Keech gave him a judgment-bond conditioned for the payment of $2200 in ten days with interest, and with the understanding that it was to be placed in Mr. Pennypacker's hands, and if necessary execution was to be issued and levied on the store goods. This bond remained in Mr. Pennypacker's hands until the 24th of December, 1849, when judgment was entered upon it and execution issued; Mr. Pennypacker acting as the attorney of Moses Keech.

The claim of Abigail Pyle was for money loaned in small sums, from time to time, by her to John Keech. With the exception of $180, the money appears to have been borrowed after April 1, 1848, and to have gone into the business of the store. The sum of $180 was received by John Keech in the year 1845. She became dissatisfied, and wanted her money; he, therefore, on the 12th of December, 1849, gave her a bill single for $510, with warrant of attorney to confess judgment, payable in five days, with interest. This amount included all, principal and interest, that was owing to her, whether by himself or the firm. Mr. Pennypacker was her counsel.

[Brown's Appeal.]

The evidence in relation to the circumstances under which the liability to Moses Keech was contracted, was from Mr. Pennypacker and John Keech, who were examined as witnesses in his behalf. Their statements on this point were objected to by the counsel of the other parties, as being the declarations of a party interested.

The auditor appointed in the matter decided that the statements were admissible, on the ground that they were made at the time of the execution and delivery of the bond—tending to show its consideration and the motives for executing it as between the parties to the instrument in the presence of both, and at a time when no other persons were interested; that they were part of the *res gestæ*.

Mercer E. Gibson was not consulted in relation to the judgments confessed by Keech, and had nothing to do with any of them except that of William H. Brown & Co., in which both he and Keech united.

It was alleged that Keech appropriated a considerable amount of the partnership property to the payment of his private debts, about the time the executions were issued.

The auditor decided that the individual as well as the partnership creditors had a right to resort to the goods of the firm, and distributed the proceeds of the sheriff's sale according to the order of the executions.

William H. Brown & Co. filed the following exceptions to the report of the auditor:—1. The auditor erred in not awarding to William H. Brown & Co. their whole claim.  2. He erred in awarding to Job Hayes, Moses Keech, and Abigail Pyle, their claims in full.  3. He erred in allowing them *interest up to the day of the sheriff's sale.*  4. He erred in not charging the expenses of the audit on the dividends of the creditors *pro rata.*  5. He erred in admitting the testimony of John Keech.

The exceptions were dismissed by the court below, and the same exceptions, on the part of William H. Brown & Co., were assigned as error.

The case was argued by *C. Gibbons* and *W. Darlington*, for appellants.

It was contended that William H. Brown & Co. being the first execution creditors *against the firm*, were entitled to precedence, and that the claims of Job Hayes, Moses Keech, and Abigail Pyle must be postponed to the other execution creditors whose money or goods were furnished for the benefit *of the partnership.*

That it is not enough to prove that money borrowed by an individual goes into the partnership estate, to make the partners liable:" *Ex parte* Emly, 1 *Rose* 61. If there be a *dormant* partner the firm will be liable for it: Graff *v.* Hinchman, 5 *Watts* 454.

In Witter *v.* Richards, 10 *Conn.* 37, it was decided, in the case

[Brown's Appeal.]

of a dormant partnership, that those who were in fact creditors of the partnership, were entitled to precedence of a prior attachment by a creditor of the ostensible partner, whose debt had no reference to the partnership business.

As to the question of interest: That it has been the practice to allow it up to the day *of the levy.* In this case the auditor awarded interest on the executions up *to the day of sale,* which was contended to be illegal.

For the appellees, separate creditors of John Keech, it was contended:—

The foundation of the rule which gives a preference to the joint creditors over the individual creditors, is the equities between the partners springing from the nature of the contract between themselves, and not from any equity in the joint creditors over the separate creditors: In *Ex parte* Ruffin, 6 *Ves.* 127; Taylor *v.* Field, 4 *Vesey* 396; *Ex parte* King, 17 *Ves.* 116, this doctrine is held. The equity is not that of the joint creditors, but that of the partners with regard to each other. The same doctrine is ruled in this State, in Bell *v.* Newman, 5 *Ser. & R.* 92; Doner *v.* Stauffer, 1 *Penn. Rep.* 203; Wharton *v.* Grant, 5 *Barr* 39; Snodgrass's Appeal; 13 *State Rep.* 71.

What equity can a dormant partner claim? He puts the other partner in absolute possession, leaves to him the sole management as the sole owner, and conceals from the world his interest in the concern until the crash comes, and then manifests his interest, perhaps with the view of preferring a favorite creditor to those creditors who were not privy to the secret. To allow him to do this would be to sanction fraud.

The leading case on this point is Baldwin *v.* Lord, 6 *Pickering* 348, in which it was held by PARKER, C. J., that in the case of a dormant partnership, an attachment of the stock in trade in the hands of the ostensible partner, in a suit against him alone, has preference to a subsequent attachment of the same goods by another person in an action against the partners: also 1 *Green's Chancery,* p. 169, Commock *v.* Johnson; 6 *Greenleaf* 188, French *v.* Chase.

In the case of Witter *v.* Richards, 10 *Con.* 42, the court says:—" It is claimed that as this partnership was a dormant one, and as the creditors did not know of its existence, they ought to stand upon the same ground as the separate creditors of Hutchinson, whom they all trusted. Now, if the partnership creditors had done any act to hold out Hutchinson as the sole owner of the goods, or if there was any fraud in the case, there would be some foundation for the argument. Here no fraud is proved, nor is there any evidence that there was any design to keep the connection secret. At first the concern was as public as its limited nature would admit."

In speaking of Lord *v.* Baldwin, the court say :—" This Aaron Brown was a dormant partner with John, but all the goods sold by their creditors were furnished for the copartnership, thus unknown. Bogart & Co. claimed priority, as their suit only was against the firm.    The court decided that they had no such priority."

The judgments of Job Hayes, Moses Keech, and A. Pyle, were obtained against John Keech, not as a member of a firm, for the existence of a firm was not known to them till after they had issued executions upon their judgments, but against John Keech, who, by secret articles, did business for a firm in the name of John Keech.

2. It is objected that John Keech is not a good witness, as his evidence tends to throw the debt on the shoulders of his partner.

This is a contest among creditors in distribution.    It is a matter of indifference to Keech how the money is applied.    If it goes to pay judgments on which Gibson is not liable and Keech is, Keech is liable over to Gibson as a partner.    It is a case of balanced interest.    Besides, the appellants made him their own witness before the auditor, by their course of examination, as the auditor reports.

3. The practice in Chester county has always been to allow interest up to day of sale: 5 *Binney* 59, Berryhill *v.* Wells, TILGHMAN says, "that the plaintiff should have his execution; interest to time of sale of the defendant's property."

Upon a sale of real estate by judicial process, interest upon the debts ceases at the return day of the writ: Ramsey's Appeal, 4 *Watts* 71.

" The return day of the writ is the period at which the defendant ceases to be liable for the debt and interest to the amount of the proceeds of sale :" Strohecker *v.* Bank, 6 *Watts* 101.

The opinion of the court was delivered March 22, by

BLACK, C. J.—The fund to be distributed was made by the sale of goods which belonged to, and formed the stock in trade of John Keech and Mercer E. Gibson.    The business had been carried on by Keech, and the partnership of Gibson was kept an entire secret. The appellees, in total ignorance of Gibson's connection with Keech, trusted the latter alone, and obtained their judgments against him alone.    Brown & Co. having been informed of the partnership, obtained judgment against both.

The appellees claim to be first paid, because their executions were earliest in the hands of the sheriff, and the appellants assert their right to priority on the ground that being creditors of the partnership, the partnership funds must be applied to the satisfaction of their debt before any part of them can go to the separate creditors of John Keech.

If this were the case of an open, known, and public partnership, the right of the appellants to stand foremost in the distribution,

could not be resisted. But the rule of equity on which that right rests is not applicable to secret partnerships.

Though this question had never before arisen here, it has been decided in Massachusetts, New Jersey, and New Hampshire. In Baldwin *v.* Lord, 6 *Pick.* 348, which is the leading case, the reasoning of Chief Justice PARKER is so sound and satisfactory, that we adopt it without the smallest doubt of its correctness.

The appellants assert that they knowing of the partnership, trusted Keech and Gibson on the faith that the property of the firm would be applied to the payment of their debt. It is upon this fact that their claim to priority of payment is founded. The appellees might answer that not knowing of the partnership and having no means of knowing it, they gave credit to Keech alone, in the natural belief that he was the sole owner of all the property he possessed. In one case the credit was given to a single person ; in the other to two ; but in both it was grounded on the same property. Equity, looking with equal eye on both parties, hands ·them over to the law ; and the law decides, as it does always, in favor of the most vigilant. *Prior in tempore potior est in jure.*

Decree affirmed.